**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT THOUSAND,**

                              **Plaintiff,**

   vs.                                                **9:15-CV-01025
                                                                              (MAD/ATB)**

**S. CORRIGAN, et. al.,**

                              **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**ROBERT THOUSAND
11-B-0026**
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929
Plaintiff, *pro se*

**HON. ERIC T. SCHNEIDERMAN**          **MARIA E. LISI-MURRAY, AAG**
New York Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 24, 2015, Robert Thousand ("Plaintiff") commenced the present civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1.

In his complaint, Plaintiff alleged that Defendants Corrigan, Jones, and Segovis assaulted him on January 27, 2014 while he was confined by DOCCS at Great Meadow Correctional

Facility ("Great Meadow"). *See id*. at ¶¶ 43-48. Plaintiff alleged that Defendants Carpenter, O'Brien, and Scarlotta knew or should have known about the assault and failed to intervene. *See id*. at ¶¶ 31-39. Plaintiff also alleged that Defendants Liberty and Prack violated Plaintiff's due process rights during the administrative process that arose out of the incident. *See id*. at ¶¶ 62-85. As a result, Plaintiff seeks substantial monetary relief. *See id*. at 22-23.

On August 15, 2016, Defendants filed a motion for partial summary judgment seeking dismissal of Plaintiff's failure to intervene and due process claims. *See* Dkt. No. 30. On December 5, 2016, Magistrate Judge Baxter issued a Report-Recommendation recommending that the Court grant Defendants' motion. *See* Dkt. No. 40. On December 16, 2016, Plaintiff filed his objections to Magistrate Judge Baxter's Report-Recommendation. *See* Dkt. No. 41.

Currently before the Court is Magistrate Judge Baxter's Report-Recommendation and Plaintiff's objections thereto.

## II. BACKGROUND

The relevant facts in this case were outlined in this Court's October 5, 2015 Decision and Order. *See* Dkt. No. 5 at 4-8. Additionally, Magistrate Judge Baxter outlined the facts in his Report-Recommendation on December 5, 2016. *See* Dkt. No. 40 at 2-8. Since neither party objects to Magistrate Judge Baxter's factual recitation, and because it is consistent with the record before the Court, it is adopted for purposes of this Memorandum-Decision and Order.

## III. DISCUSSION

**A.  Standard**

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations

omitted).  The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

"'[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.'"  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)) (other citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994) (quotation and other citations omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the

court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir.

2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, \*5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, \*8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross v. Blake*, \_\_\_ U.S. \_\_\_ 136 S. Ct. 1850, 1855 (2016). "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through

6

machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).[1]

In his Report-Recommendation, Magistrate Judge Baxter noted that, on February 11, 2014, Plaintiff filed a grievance against Defendant Corrigan alleging that he assaulted Plaintiff on January 21, 2014, and then falsified a misbehavior report to cover up his wrongdoing. *See* Dkt. No. 40 at 12. Although Plaintiff exhausted this grievance, Plaintiff concedes that the grievance "makes no mention of any other correction officer being present or taking part in the assault." Dkt. No. 38 at ¶ 132. Plaintiff also conceded that his grievance made no mention of any bystander who witnessed the assault, and did not mention any failure to protect or intervene by any correction official. *See id.* at ¶¶ 133-34. In light of these and other admissions, Magistrate Judge Baxter found that Plaintiff's grievance was insufficient to alert "'the prison officials that he was alleging some wrongdoing beyond that alleged against the individual or individuals specifically named in the grievance.'" Dkt. No. 40 at 13 (quoting *Peele v. Donah*, No. 9:15-cv-317, 2016 WL 4400473, *5 (N.D.N.Y. June 14, 2016)). Magistrate Judge Baxter rejected Plaintiff's argument that a "reasonable investigation" of the matter would have led "any competent investigator" to recognize that Plaintiff was also alleging that Defendants Carpenter, O'Brien, and Scarlotta failed to intervene and prevent the assault on Plaintiff. *See* Dkt. No. 40 at 13-14.

---

[1] In *Ross*, the Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.* at 1862; *see also Williams*, 829 F.3d at 123 (recognizing that the framework set forth in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), setting forth a "special circumstances" exception to the PLRA's exhaustion requirement has been abrogated in part by *Ross*). As such, the Supreme Court specifically found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedy unavailable. *See id.* at 1858.

7

Having reviewed the Report-Recommendation and the parties' submissions, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff failed to exhaust his administrative remedies as to his failure to intervene claim against Defendants Carpenter, O'Brien, and Scarlotta. In his objection, Plaintiff first claims that, although he only named Defendant Corrigan in his grievance, he "made a statement that made it quite clear that [he], at least on one prior occasion, attempted to submit another grievance regarding the same incident." Dkt. No. 41 at 1. Even assuming that Plaintiff did attempt to file an earlier grievance which was not received by the facility, he still timely filed a grievance regarding the alleged January 27, 2014 assault by Defendant Corrigan, which was exhausted. At no point during the exhaustion process did Plaintiff provide any reason for prison officials to believe that he was attempting to assert a claim against Defendants Carpenter, O'Brien, and Scarlotta for failure to intervene. In fact, his grievance specifically indicates that he was assaulted by Defendant Corrigan on C-5 company, where his cell was located. *See* Dkt. No. 30-23 at 9. All evidence in the record, however, indicates that Defendants Carpenter and Scarlotta were in an entirely different section of the facility at the time of the alleged assault. *E.g.*, Dkt. No. 30-23 at 30-23 at 26-27. In fact, during his deposition, Plaintiff admitted that Defendant Scarlotta was "downstairs" when he was being assaulted by Defendants Corrigan and Jones. *See* Dkt. No. 30-13 at 41. Although Defendant O'Brien was in a position where he could potentially observe the use of force from the console area, Plaintiff admitted that he was not in a position to get to and stop the alleged assault from occurring. *See id.* at 43.

Moreover, in his grievance, Plaintiff does indicate that this grievance "won't be as detailed as the last one, so if more details are needed, someone needs to come see me." Dkt. No. 30-23 at 9. Although an official did "come see" Plaintiff to interview him about the grievance, Plaintiff

8

failed to provide any details that would alert Great Meadow officials of the failure to intervene. *See* Dkt. No. 30-23 at 15.

Throughout his objections, Plaintiff repeats the arguments raised in opposition to the motion for summary judgment, primarily that any reasonable investigation would have revealed these Defendants failed to intervene to protect Plaintiff. These conclusory allegations are entirely belied by the record before the Court. Nothing in Plaintiff's grievance would have placed prison officials on notice that he was alleging some wrongdoing by Defendants Carpenter, O'Brien, and Scarlotta. *See Peele v. Donah*, No. 9:15-cv-317, 2016 WL 4400473, *5 (N.D.N.Y. June 14, 2016) (citation omitted). Plaintiff also argues that he sufficiently alerted prison officials of his failure to intervene claim through alternative means, such as through the disciplinary hearing and Inspector General's investigation. The Court, however, agrees with Magistrate Judge Baxter that his position is without merit. Nothing in the record indicates that Plaintiff ever alleged any wrongdoing by Defendants Carpenter, O'Brien, or Scarlotta in these other forums. *See Collins v. Caron*, No. 9:10-cv-1527, 2014 WL 296859, *4 (N.D.N.Y. Jan. 27, 2014). Rather, Plaintiff consistently focused his complaints and allegations on the alleged assault by Defendants Corrigan, Jones, and Segovis. *See* Dkt. No. 39-10 at 25-26; Dkt. No. 39-12 at 5-6, 12, 16.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff failed to exhaust his failure to intervene claim as to Defendants Carpenter, O'Brien, or Scarlotta. As such, Defendants' motion for summary judgment as to this claim is granted.[2]

---

[2] In the alternative, the Court finds that these Defendants are entitled to summary judgment because they were not personally involved. As discussed above, the record makes clear that Defendants Carpenter and Scarlotta were in an entirely different section of the facility at the time of the alleged assault. *E.g.*, Dkt. No. 30-23 at 26-27; Dkt. No. 30-13 at 41. Further, Plaintiff admitted that Defendant O'Brien was behind a console and would not have been able to intervene to prevent or stop the alleged assault. *See* Dkt. No. 30-13 at 43. As such, the undisputed facts

(continued...)

9

## C.     Collateral estoppel

Defendants Liberty and Prack contend that Plaintiff's due process and supervisory claims against them are precluded by collateral estoppel. Plaintiff concedes that he litigated due process claims related to his grievance rehearing in an Article 78 petition before the New York State Appellate Division, Third Department, which was denied on May 12, 2016. *See Thousand v. Prack*, 139 A.D.3d 1212 (3d Dep't 2016). In that proceeding, Plaintiff challenged the validity of the Tier III rehearing conducted by Defendant Liberty between April 23, 2014 and May 1, 2014, which was upheld on appeal by Defendant Prack. *See* Dkt. No. 30-15. Magistrate Judge Baxter agreed and recommended granting Defendants' motion for summary judgment as to these claims. *See* Dkt. No. 40 at 19-24.

"The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). Collateral estoppel applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was 'actually litigated and actually decided,' (3) there was 'a full and fair opportunity for litigation in the prior proceeding,' and (4) the issues previously litigated were 'necessary to support a valid and final judgment on the merits.'" *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). Importantly, "[t]hese four factors are required but not sufficient." *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005). "In addition, a court must satisfy itself that application of the doctrine is fair." *Id.* (citations omitted).

---

[2](...continued)
clearly demonstrate that the moving Defendants are entitled to summary judgment on these alternative grounds.

"Parties to a previous Article 78 proceeding generally have had a full and fair opportunity to litigate the issues raised in that proceeding." *Rahman v. Acevedo*, No. 08-civ-4368 (DLC), 2011 WL 6028212, *5 (S.D.N.Y. Dec. 5, 2011) (citing *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)). Collateral estoppel is intended to prevent "the relitigation of claims already decided under constitutionally adequate circumstances." *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996) (other citation omitted).

In the present matter, Magistrate Judge Baxter found that, "for purposes of the collateral estoppel analysis . . . [P]laintiff's due process claims in this action are identical to those he raised in the Appellate Division; the issues were 'actually decided' in the Appellate Division; [P]laintiff had a full and fair opportunity for litigation in the Appellate Division proceeding; and the issues litigated in the Appellate Division were necessary to support a valid and final judgment on the merits." Dkt. No. 40 at 24.

Plaintiff objects to this finding and directs the Court to his response in opposition to Defendants' motion for summary judgment and indicates that he "has nothing more to add to the argument." Dkt. No. 41 at 6.

As Magistrate Judge Baxter correctly identified, the following claims survived *sua sponte* review after this Court's October 5, 2015 Decision and Order.

> (1) Defendant Liberty refused to allow [P]laintiff to present witness testimony and refused to inquire why certain witnesses, including inmate Thomas, refused to testify on behalf of [P]laintiff;
>
> (2) Defendant Liberty refused to allow [P]laintiff to present documentary evidence, specifically a transcript of his first grievance hearing;
>
> (3) Defendant Liberty disregarded conflicting testimony from correctional officer witnesses and her final determination was influenced by bias against [P]laintiff;

11

(4) His re-hearing was untimely because it did not take place within the seven day window proscribed by DOCCS regulations;

(5) Defendant Prack was aware of the constitutional defects in the rehearing and failed to remedy them on administrative appeal.

*See* Dkt. No. 5 at 16-17; *see also* Dkt. No. 40 at 20-21.

Plaintiff asserted the following causes of action in the Article 78 proceeding:

(1) He was denied the opportunity to present witnesses, including inmate James Thomas, due to intimidation by correctional officers and defendant Liberty's failure to inquire into the reasons for their refusal to testify.

(2) Defendant Liberty improperly denied Plaintiff's request to submit a transcript of his prior proceeding that had been prepared by petitioner's attorney;

(3) Defendant Liberty did not have substantial evidence to support her determinations;

(4) The re-hearing was untimely and in violation of DOCCS regulations;

(5) Defendant Liberty was biased and permitted correctional officer witnesses an opportunity to coordinate their testimony in order to correct inconsistencies.

*See* Dkt. No. 30-15 at 6-15; *see also* Dkt. No. 40 at 21.

Magistrate Judge Baxter correctly concluded that the Appellate Division affirmed the disciplinary hearing, and in doing so, decided each of the due process claims that Plaintiff now raises in federal court. *See Thousand*, 139 A.D.3d at 1212-13. The Appellate Division specifically addressed and rejected each of the claims that Plaintiff has put forth in the present matter. *See id.* Defendants have fully satisfied their burden and nothing in the record supports a finding that Plaintiff was not afforded a full and fair opportunity to litigate these issues before the Appellate Division. *See Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996).

12

As Magistrate Judge Baxter correctly determined, Plaintiff's due process claims in this action are identical to those he raised in the Appellate Division, the issues were actually decided, Plaintiff had a full and fair opportunity for litigation in the Appellate Division, and the issues litigated in the Appellate Division were necessary to support a valid and final judgment on the merits. Accordingly, the Court finds that Defendants Prack and Liberty are entitled to summary judgment as to Plaintiff's due process and supervisory claims.

### IV. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's December 5, 2016 Report-Recommendation (Dkt. No. 40) is **ADOPTED** in its entirety for reasons set forth therein; and the Court further

**ORDERS** that Defendants' Motion for Partial Summary Judgment (Dkt. No. 30) is **GRANTED**; and the Court further

**ORDERS** that Defendants Carpenter, O'Brien, Scarlotta, Liberty, and Prack are **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 23, 2017
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge